UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

James Scott, et al.

    v.                                      Civil No. 06-cv-286-JD
                                            Opinion No. 2007 DNH 007
First American Title
Insurance Company

O R D E R

James and Sue Scott brought suit in state court as a putative class action challenging the premiums charged by First American Title Insurance Company for issuing title insurance on refinancing transactions. First American removed the action to this court based on diversity jurisdiction under 28 U.S.C. § 1332(d)(2)(A). The plaintiffs filed two amended complaints, adding named plaintiffs Stephen and Ellen St. Louis and alleging federal jurisdiction. First American moved to dismiss the claims. While the motion to dismiss was pending, the plaintiffs moved to remand the case to state court, asserting that the amount in controversy does not meet the jurisdictional minimum. Because the motion to remand challenges the court's jurisdiction, that motion will be addressed first.

I.  Motion to Remand

When diversity jurisdiction is challenged, the party seeking to invoke the court's jurisdiction bears the burden of showing that the statutory requirements are met. Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). To meet the challenge, that party must "alleg[e] with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Id. at 5 (internal quotation marks omitted). The court looks at the circumstances existing when the complaint was filed to determine whether the amount in controversy requirement is met. Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 5 (1st Cir. 1995).

The Class Action Fairness Act added a new provision governing diversity jurisdiction, which requires that the amount in controversy exceed $5,000,000. § 1332(d)(2). That amount is determined based on the aggregate amount of the class members' claims. Frazier v. Pioneer Americas LLC, 455 F.3d 542, 545 (5th Cir. 2006). Despite the new requirements under the Class Action Fairness Act, the burden remains on the defendant in a removed case to establish that federal subject matter jurisdiction exists. See Morgan v. Gay, --- F.3d. ---, 2006 WL 3692552 at *1

(3d Cir. Dec. 15, 2006); Miedema v. Maytag Corp., 450 F.3d 1322, 1328 (11th Cir. 2006).

To establish removal jurisdiction, First American relied on the allegations in the complaint in this case and on the more specific jurisdictional allegations in a related case filed in this court by the plaintiffs' counsel.  The first complaint in this case, which was filed in state court, alleged:  "It is reasonable to presume that First American has collected several million dollars in unlawful premiums from thousands of New Hampshire homeowners during the class period--and all of such homeowners can be readily identified for the purpose of returning their money to them."  1st Comp. ¶ 13.  Several days before commencing the state court action, the plaintiffs' counsel filed a related case in federal court, Kashulines v. First Am. Title Ins. Co., 06-cv-235-JM (D.N.H. June 27, 2006).  The plaintiffs in Kashulines alleged the same claims against First American that are alleged in this case and also filed the case as a putative class action.  To show federal jurisdiction, the plaintiffs alleged:  "the matter in controversy exceeds $5 million, exclusive of interests and costs . . . ."[1]  Kashulines Comp. ¶ 12.  In addition, after removal, the plaintiffs in this case

---

[1] The Kashulines plaintiffs voluntarily dismissed that case on August 1, 2006.

filed two amended complaints in this court in which they asserted: "Plaintiffs, having engaged in substantial pre- and post-filing fact investigation, have likewise concluded that more than $5 million is in dispute." 2d Am. Compl. ¶ 17.

The plaintiffs acknowledge those jurisdictional allegations but argue that the court should disregard them. They contend that the allegations in the <u>Kashulines</u> complaint should be disregarded because the case has been dismissed. They also contend that they did not know whether this case would satisfy the jurisdictional minimum when the case was commenced in state court. They argue that, after filing the amended complaints here, in which they alleged in good faith that more than $5,000,000 was in controversy, they have discovered that not all of First American's agents charged the higher rate during the class period. In support, they have moved for leave to file the affidavit of a homeowner, David McCarthy, who refinanced his mortgage twice in 2006 and was charged the lower rate for the lender's title insurance policy. The plaintiffs argue that because at least one agent was not charging the inflated rate, the amount in controversy will be reduced.

Once jurisdiction attaches, based on a jurisdictional amount that is alleged in good faith, "it is not ousted by a subsequent change of events." <u>Coventry</u>, 71 F.3d at 7. Even the discovery

of an error or different circumstances that reduces the amount initially claimed does not affect jurisdiction. Id. at 7-8. In contrast, if jurisdiction were never established, subsequent events might preclude jurisdiction. See, e.g., Terry v. Ford Motor Credit Co., 2006 WL 3455076 at *1 (D.R.I. Nov. 27, 2006). The McCarthy affidavit, by itself, is not sufficient to rebut the defendant's showing that "it is not a legal certainty that the claim involves less than" $5,000,000. Spielman, 251 F.3d at 5.

First American's removal notice adequately alleged the amount in controversy to satisfy § 1332(d)(2)(A). The plaintiffs' jurisdictional allegations in the subsequent amended complaints established jurisdiction. The second amended complaint, filed on September 5, 2006, remains the operative pleading in this case. New information that may raise questions as to the accuracy of those allegations does not undermine the jurisdiction that the plaintiffs allegations previously established. Therefore, the motion to remand is denied.

II.  Motion to Dismiss

In the second amended complaint, the plaintiffs pared their claims down to three: breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment.

First American moves to dismiss all three claims.  The plaintiffs object and move to file a surreply.

In considering a motion to dismiss, the court "take[s] as true all well-pleaded allegations and draw[s] all reasonable inferences in the plaintiff's favor."  Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 5-6 (1st Cir. 2006).  "The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion."  Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 n.3 (1st Cir. 2006).  "'A complaint should not be dismissed unless it is apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  Stanton v. Metro Corp., 438 F.3d 119, 123-24 (1st Cir. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)) (other quotation marks omitted).

## Background

The plaintiffs are James and Sue Scott, who own their home in Goffstown, New Hampshire, and Stephen and Ellen St. Louis, who own their home in Manchester, New Hampshire.  The plaintiffs allege that the Scotts obtained a first mortgage of $153,000 when

6

they bought their home in 1999, which was covered by a title insurance policy. The Scotts refinanced in 2002 with a new mortgage from Ameriquest Mortgage Company in the amount of $223,000, which was again covered by a title insurance policy. They refinanced a second time in 2003 with a new mortgage in the amount of $261,000 and a title insurance policy to cover that amount from First American.

The St. Louises bought their home in 1998 with a mortgage of $98,000 that was covered by a title insurance policy. They refinanced in 2003 with a mortgage of $150,000 that was also covered by a title insurance policy. In 2004, they refinanced their home with a mortgage from Washington Mutual Bank in the amount of $164,000 and purchased a title insurance policy from First American with Washington Mutual as the insured.

The plaintiffs allege that First American is required to charge a lower rate for its premiums when the title insurance policy is reissued for a refinanced mortgage and certain conditions are met. They argue that the lower rate is required because the title search is expedited by the existence of a previous title search. Based on their interpretation of First American's rate manual, they assert that if the refinance occurs within ten years of the original mortgage for the same owner and property, the lower reissue rate applies to the amount of the

refinanced mortgage to the extent of the amount of the original mortgage. They contend that because they met those conditions, they were entitled to the lower reissue rate but were charged the standard rate instead. Based on that theory, the plaintiffs allege breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

A.  Breach of Contract

The plaintiffs allege that the circumstances of obtaining title insurance from First American provided an implied-in-fact contract between them and First American. They contend that First American breached the contract by failing to use the reissue rate in calculating their premiums, by failing to request copies of their prior policies for purposes of using the reissue rate, and by failing to inform the plaintiffs of the reissue rate and its requirements. First American moves to dismiss the claim on the ground that the plaintiffs have not alleged the existence of a valid contract between them and First American.

"A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds." Durgin v. Pillsbury Lake Water Dist., 903 A.2d 1003, 1006 (N.H. 2006). "For a meeting of the minds to occur, the parties must assent to the same contractual terms." Id. "A contract implied in fact is

based on a promise manifested in language, conduct, silence or by implication from the circumstances, including a course of dealing or course of performance." Lorenz v. N.H. Admin. Off. of Courts, 152 N.H. 632, 269 (2005). Although the meaning of a written contract is a legal issue, "where there is a disputed question of fact as to the existence and terms of a contract it is to be determined by the trier of facts, provided there is any evidence from which it could be found there was a contract between the parties." Goodwin R.R., Inc. v. State, 128 N.H. 595, 604 (1986).

The plaintiffs allege that First American offered to sell title insurance with the mortgage lenders as the insureds, that the plaintiffs accepted the offer by applying for coverage under the policies, and that they paid First American consideration in the form of premiums for the policies. Based on those allegations, an implied contract existed, requiring First American to issue title insurance, as applied and paid for by the plaintiffs, with their lenders as the insureds. The plaintiffs allege that First American issued those policies and, therefore, do not allege a breach of that agreement.

Instead, the plaintiffs' breach of contract claim is based on their theory that the terms of New Hampshire Revised Statutes Annotated 416-A:17, II & III, were incorporated into the implied contract and that they qualified for the reissue rate under the

9

terms of First American's rate manual, which was not applied to their premiums.  They allege that RSA 416-A:17, II & III, as incorporated into the implied contract, required First American "to use reasonable efforts to ascertain the plaintiffs' . . . applicable title insurance premium charges in accordance with its filed rate manual and . . . prohibited [First American] from charging for services not actually rendered and from charging any more for the applied-for coverage than the maximum applicable premium rate specified in its filed rate manual."  2d Am. Comp. ¶ 41.  First American contends that no such agreement existed and argues that even if it did, the plaintiffs did not qualify for the reissue rate under the terms of the rate manual.

The plaintiffs provide no factual allegations to support their conclusory assertion that RSA 416-A:17 was incorporated by implication into the implied contract.  The cases they cite in support of their opposition to the motion to dismiss the breach of contract claim recognized an implied-in-fact contract as outlined above, without the additional implied terms incorporating RSA 416-A:17, II & III.[2]  Therefore, the plaintiffs

---

[2]One of the cited decisions, <u>Slapikas v. First Am. Title Ins. Co.</u>, Civil No. 06-cv-84-JFC (W.D. Pa. May 8, 2006), merely states that First American's motion to dismiss the breach of contract claims was denied without prejudice to filing a motion for summary judgment on those claims, but did not provide any reasoning or analysis or explanation of the nature of the claims.

have not alleged sufficient facts to support their breach of contract claim.

In addition, even if the plaintiffs had properly alleged that RSA 416-A:17 was an implied term of the implied contract, the statute does not appear to support their claim.  RSA 416-A:17, II & III, provide as follows:

> II.  Every title insurance company shall file with the commissioner its schedule of fees, every manual of classifications, rules and plans pertaining thereto, and every modification of any of the foregoing which it proposes to use in this state.  In every such filing, the company shall set forth that portion of the fee which is designated as premium as herein defined.
>
> III.  No schedule of fees or premium rates shall take effect until the commissioner shall approve the same as adequate, reasonable, and non-discriminatory; and no company authorized to transact business in this state shall make, write, place, or cause to be made any title insurance policy except at a rate approved by the commissioner.[3]

The plaintiffs have not alleged that First American breached any of the provisions of that statute.  Instead, the plaintiffs assert that First American failed to comply with the requirements of the rate manual, but they do not explain how the provisions of the rate manual became part of the implied contract between the plaintiffs and First American.  Further, the rate manual does not

---

[3]Subsection III was deleted effective July 23, 2004.  Therefore, the plaintiffs cannot base claims on that subsection if the refinancing occurred after the effective date of the amendment.

appear to require First American to provide the reissue rate but rather offers the option of the reissue rate, perhaps as a marketing tool for agents of First American policies.[4] Therefore, even if the statute were incorporated into the implied contract, it would not provide the obligations the plaintiffs are seeking here.[5]

---

[4] The rate manual appears to provide instruction and guidance to agents for processing First American insurance policies.  The section that addresses the reissue rate provides, in pertinent part, as follows:

> 7.  Premiums for Reissue of First American Policies: First American grants reissue loan and reissue owner's rates if certain conditions exist as shown below.
>    . . .
> A.  <u>Standard Loan Policy Reissues</u>:
>
> If the borrower refinances within TEN years of the first mortgage, the original loan is discharged, and a new mortgage placed of record, the loan reissue rate <u>may</u> be used to the extent of the amount of the first mortgage policy.  Original or First Mortgage rates <u>must</u> be used on amounts in excess of the first policy.  If the prior policy was not a First American policy, you must obtain a copy of the prior policy to qualify for the re-issue rate.

2d Am. Compl. Ex. B § 7 (emphasis added).

[5] In the cases cited by the plaintiffs, the Northern District of Ohio district court denied First American's motions to dismiss the breach of contract claims, finding that the plaintiffs alleged an implied contract in a three-way transaction or under an agency theory.  See <u>Barnes v. First Am. Title Ins. Co.</u>, 2006 WL 2265553 at *4-*5 (N.D. Ohio Aug. 8, 2006); <u>Chesner v. Stewart Title Guar. Co.</u>, 2006 WL 2252542 at *4-*5 (N.D. Ohio Aug. 4,

In summary, implied contracts existed between the plaintiffs and First American that required First American to issue title insurance to cover the lenders on the plaintiffs' mortgages in exchange for the premiums paid by the plaintiffs. Those implied contracts did not include a requirement that the plaintiffs be informed of the reissue rate or that the reissue rate be used to calculate their premiums. Therefore, the plaintiffs' breach of contract claim, based on a theory that RSA 416-A:17 was incorporated into the implied contract, making the reissue rate mandatory, and that First American breached the agreement by not providing the reissue rate, does not state a cause of action and is dismissed.

B.   Breach of the Duty of Good Faith and Fair Dealing

The plaintiffs allege that First American breached the duty of good faith and fair dealing by using a shortened title examination in reliance on the plaintiffs' prior title insurance policies while charging the standard, higher, premium. The plaintiffs contend that First American should have requested copies of their prior policies, should have informed them of the availability of the reissue rate, and should have used the

---

2006).  The plaintiffs here have not made that argument.

reissue rate for calculating their premiums.  First American denies that any contract existed between it and the plaintiffs.

Under New Hampshire law, contracts that are not governed by the Uniform Commercial Code may incorporate an implied duty of good faith performance.  <u>Centronics Corp. v. Genicom Corp.</u>, 132 N.H. 133, 143-44 (1989).  Whether that duty applies in a given case depends on the results of four questions: (1) whether the agreement allows or confers discretion on the defendant to deprive the plaintiff of a substantial portion of the benefit of the agreement, (2) whether the parties intended to enter a legally enforceable contract, (3) whether the defendant exercised its discretion reasonably, and (4) whether the defendant's abuse of discretion caused the damage complained of.  <u>Ahrendt v. Granite Bank</u>, 144 N.H. 308, 312-13 (1999).

In this case, First American argues that the plaintiffs have not alleged the existence of an enforceable contract, which stops the analysis at the second step.  As is discussed above, however, implied contracts were created between First American and the plaintiffs that required First American to issue a title insurance policy with the lender as the insured in exchange for the premiums paid by the plaintiffs.  Therefore, First American's motion to dismiss the claim of breach of the implied duty of good faith and fair dealing is denied.

C.  Unjust Enrichment

The plaintiffs also allege that First American's conduct constitutes unjust enrichment. In support of that claim, the plaintiffs allege that they were entitled to have their premiums calculated under the reissue rate and that First American was unjustly enriched by retaining the premiums calculated under the standard rate. They contend that they are entitled to restitution of the amounts paid in excess of the reissue rate.

Under a theory of unjust enrichment, a defendant must make restitution if he has obtained a benefit "either through wrongful acts or passive acceptance of a benefit that would be unconscionable to retain." Kowalski v. Cedars of Portsmouth Condo. Ass'n, 146 N.H. 130, 133 (2001). Unjust enrichment is an equitable remedy, which is available only in the absence of a breach of contract remedy. See In re Haller, 150 N.H. 427, 430 (2003); see also Mass. Eye & Ear Infirmary v. WLT Phototherapeutics, Inc., 412 F.3d 215, 234 (1st Cir. 2005).

First American argues that the plaintiffs' unjust enrichment claim must be dismissed because it is based on a statutory duty under RSA 416-A:17 and because the plaintiffs also allege breach of contract. As pled, the plaintiffs' unjust enrichment claim makes no mention of RSA 416-A:17, and the plaintiffs deny that their claim is based on a statutory requirement. Although First

American is correct that the plaintiffs cannot recover under both a breach of contract theory and an unjust enrichment theory, that differentiation does not need to be made now.  Pleading in the alternative is an appropriate course to follow at this stage of the proceedings.  Fed. R. Civ. P. 8(a).

## Conclusion

For the foregoing reasons, the plaintiffs' motion for leave to file a substitute affidavit (document no. 35) is granted, and the substitute affidavit was considered.  The plaintiff's motion to remand (document no. 18) is denied.  The defendant's motion to dismiss (document no. 14) is granted as to the plaintiffs' first breach of contract claim (count one) and is otherwise denied.  The plaintiffs' motion for leave to file a surreply (document no. 20) is granted, and the surreply was considered.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

January 17, 2007

cc:  Christopher D. Baucom, Esquire
     Elizabeth T. Ferrick, Esquire
     Wilbur A. Glahn, III, Esquire
     Douglas W. King, Esquire
     Charles A. Newman, Esquire
     Edward K. O'Brien, Esquire