UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>James Scott, Sue Scott,</u>
<u>Stephen St. Louis, and</u>
<u>Ellen St. Louis</u>

      v.                       Civil No. 06-cv-286-JD
                                    Opinion No. 2008 DNH 090

<u>First American Title</u>
<u>Insurance Company</u>

<u>O R D E R</u>

The plaintiffs, James and Sue Scott and Stephen and Ellen
St. Louis, brought a putative class action against First American
Title Insurance Company, alleging breach of the duty of good
faith and fair dealing and unjust enrichment.  The court denied
their first motion for preliminary approval, without prejudice,
because they failed to satisfy the requirements of Federal Rule
of Civil Procedure 23(a) as to numerosity and typicality of Rule
23(b)(3).  The parties now renew their joint motion for
certification of a settlement class and for preliminary approval
of their class action settlement agreement.  In addition, First
American filed its own supplemental memorandum in support of
class certification to address the predominance requirement under
Rule 23(b)(3).

## Discussion

The plaintiffs' claims in this case arose from the rate they were charged by First American for title insurance when they refinanced the mortgages on their homes.  The plaintiffs contend that they were entitled to a lower reissue rate because they refinanced their homes within ten years of their original mortgages and title searches but were instead charged the standard rate.  The plaintiffs filed their suit as a putative class action.

The parties have reached a settlement.  They jointly propose a class, for purposes of settlement, defined as:

> All owners of New Hampshire property who, during the
> Class Period June 30, 2003 to this Court's preliminary
> approval date, refinanced mortgages on such property
> within ten years after the date of the issuance of a
> prior lenders [sic] policy of title insurance insuring
> a mortgage covering the same property, where there was
> no change in ownership, and who paid a premium for a
> lenders [sic] policy of title insurance issued by First
> American in an amount in excess of the Reissue Rate.

They ask the court to certify their proposed class and to approve their settlement under Federal Rule of Civil Procedure 23(e).

As the court stated in its previous order, when the parties seek certification for purposes of a settlement, "the moment of certification requires heightened attention . . . to the justifications for binding the class members." Ortiz v.

2

Fibreboard Corp., 527 U.S. 815, 849 (1999).  The parties must
show that the proposed class satisfies the requirements of
Federal Rule of Civil Procedure 23, not merely that the
settlement is fair.  Id.; Amchem Prods., Inc. v. Windsor, 521
U.S. 591, 621–627 (1997).  "To obtain class certification, the
plaintiff must establish the four elements of Rule 23(a) and one
of the several elements of Rule 23(b)."  Smilow v. Southwestern
Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003); accord
In re New Motor Vehs. Canadian Export Antitrust, ––– F.3d –––,
2008 WL 820922, at *10 (1st Cir. Mar. 28, 2008).

I.   Rule 23(a)

     Through their prior briefing, the parties have satisfied the
requirements of Rule 23(a) to show common questions of law or
fact and that the representatives are typical of the class.  In
their renewed motion, the parties address the requirements of
numerosity and adequate representation.

     A.   Numerosity

     To satisfy the numerosity requirement of Rule 23(a), the
parties must show that "the class is so numerous that joinder of
all members is impracticable."  Berenson v. Nat'l Fin. Servs.
LLC, 485 F.3d 35, 38 (1st Cir. 2007).  In their initial motion

3

for certification and approval, the parties based their showing
of numerosity on plaintiff counsel's belief and "common sense"
that the number of affected consumers of mortgages from First
American would be "quite high."  The court found that showing to
be inadequate.

In support of their renewed motion, the parties now rely on
information retrieved from First American's computer systems.
Based on that information, First American determined that it sold
56,233 "lenders policies of title insurance covering New
Hampshire property," between June 30, 2003, and July 11, 2007.
Because additional policies have been sold since July 11, 2007,
the total number is growing.  First American's systems cannot
determine how many of the 56,233 policies sold in New Hampshire
qualified for the reissue rate but were sold at the standard
rate.  The 56,233 policies sold between June 30, 2003, and July
11, 2007, were issued without simultaneous owner's policies,
however, which suggests that the policies were for refinancing
rather than initial mortgages, and the policies were not sold at
the reissue rate.

The parties represent that a substantial portion of the
56,233 lender's policies issued were for refinancing.  They also
contend that based on a housing study conducted by Harvard
University's Joint Center for Housing Studies homeowners on

4

average hold a mortgage before refinancing for only two years.
Based on that statistic, the parties assert that most of the
refinancing policies would have been issued within ten years of
the original mortgage.  They acknowledge that some of the
policies would cover transactions that would not qualify but
argue that because so few policies were sold at the reissue rate,
that number would not affect the overall potential for class
size.

The new information provided by the parties substantiates
their claim that the putative class is likely to number in the
thousands if not tens of thousands.  Although numbers alone will
not necessarily meet the numerosity requirement of Rule 23(a),
thousands of members of a proposed class will usually satisfy
that requirement.  See Daffin v. Ford Motor Co., 458 F.3d 549,
552 (6th Cir. 2006); Andrews v. Bechtel Power Corp., 780 F.2d
124, 131 (1st Cir. 1985).  The parties have met their burden of
showing numerosity under Rule 23(a).


B.  Adequacy

Rule 23(a) also requires that the class representatives be
able to fairly and adequately protect the interests of the class.
Berenson, 485 F.3d at 38.  The purpose of the adequacy
requirement is "to uncover conflicts of interest between named

5

parties and the class they seek to represent." <u>Amchem</u>, 521 U.S. at 625.  The named representatives must "possess the same interest and suffer the same injury shared by all members of the class [they] represent[]." <u>Id.</u> (internal quotation marks omitted).

The parties failed to meet this requirement in their prior motion because, under the settlement stipulation, the two named plaintiff couples were to receive $3,000 each as representatives' fees and the court could not determine whether the settlement fund would be adequate to cover the claims of all of the class members along with the representatives' fees.  If the class were too numerous to recover from the settlement fund, the named plaintiffs' right to receive representatives' fees would conflict with the interests of the class.

In their renewed motion, the parties address the award structure under their stipulation.  They represent that each eligible class member, meaning those who submit valid claims, which the parties represent is likely to be only between 5% and 10% of the potential class, will receive at least fifty percent of their claimed losses.  The parties also represent that the representatives' fees will not be paid from the settlement fund.

Under the stipulation, the settlement fund would initially hold $166,000, but First American would be required to provide

additional funds as necessary to compensate class members for
reduced percentages of their claims if the total of the claims
exceeds $166,666.  As amended, however, the stipulation
guarantees that First American's total liability will be capped
at $330,200, which includes administrative costs of $74,200,
attorneys' fees of $83,333, and $6,000 in fees to the class
representatives, making the amount of the attorneys' fees and the
class representatives' fees factors in the total fund available
to pay claims.[1]  Class representative fees, attorneys' fees, and
administrative costs combined are almost 50% of First American's
maximum liability.  See Staton v. Boeing Co., 327 F.3d 938, 964–
65 (9th Cir. 2003) (discussing potential conflict in settlement
of class action involving disproportionate attorneys' fees).

The limitation on First American's liability under the
settlement does not apply, however, "if the aggregate amount of
all Claimant Shares is more than $333,333, [in which case] each
Claimant Share shall be reduced by 50% and . . . First American

---

[1]The parties characterize the $330,200 amount as "the total
minimum consideration for the settlement."  Renewed Jt. Mot. at
14 n.3.  That statement is contrary to the plain language of the
amended stipulation:  "First American's total maximum settlement
liability will not exceed $330,200 inclusive of the settlement
fund, administrative expenses, class representative fees, costs,
expenses, attorneys' fees, and any other charge, as outlined
below, except as provided in Section (V)(E)(4)(c) below."  Ex. B,
Ren. Jt. Mot., Am. Stip. (emphasis added).

shall pay that amount . . . ."  Ex. B, Ren. Jt. Mot., Stip.
Sections B(2) & V(E)(4)(c).  The liability limitation does apply,
however, to the circumstance described in Section V(E)(4)(b),
which would appear to significantly change the operation of that
provision, limiting the fund available for payment of claims to
$166,667 and allowing a 50% payment (a payment of $100 as
suggested by the parties) to only 1666 class members, which is
slightly less than 3% of a potential class of 56,000 purchasers
of First American policies.

As currently structured, the interests of the class
representatives in receiving both representatives' fees and
recoveries for their claims, along with the amount agreed to by
the parties for payment of attorneys' fees and administrative
costs, could conflict with the interests of the potential class
although not necessarily with the eligible class.  Therefore, the
adequacy of representation depends upon the number in the class
who will be eligible to receive awards under the settlement
stipulation.  Because that number is not now available, no
determination can be made as to the adequacy of representation.

II.  Rule 23(b)(3)

Certification under Rule 23(b)(3) requires that the court
find "that the questions of law or fact common to the members of
the class predominate over any questions affecting only
individual members, and that a class action is superior to other
available methods for the fair and efficient adjudication of the
controversy."  Fed. R. Civ. P. 23(b)(3).  In its prior order, the
court concluded that the parties had not sufficiently addressed
the requirements of Rule 23(b)(3) to permit a ruling.  The
parties have now filed a renewed joint motion, addressing the
Rule 23(b)(3) requirements, and First American filed a separate
supplemental memorandum further addressing the predominance
requirement of Rule 23(b)(3).

Rule 23(b)(3) "is a joinder device for consolidating
separate but similar claims."  Tardiff v. Knox County, 365 F.3d
1, 4 (1st Cir. 2004).  Under the Rule 23(b)(3) analysis, the
court "must formulate some prediction as to how specific issues
predominate in a given case."  In re New Motor Vehs., 2008 WL
820922, at *11 (internal quotation marks omitted).  When common
questions predominate as to liability, courts will ordinarily
find predominance even if individual issues concerning
affirmative defenses or damages exist.  Smilow, 323 F.3d at 39–
40.  In addition, when individual claims would be too small to

9

litigate separately, a class action is superior to individual litigation.  Id. at 40.

In this case, the parties contend that each potential class member's claim is based on the same issue:  whether the applicant for First American title insurance was eligible for the reissue rate but was charged a higher premium.  The plaintiffs also argue that the potential class members share an issue as to whether First American's protocols, guidelines, and lack of oversight of its agents caused eligible applicants not to receive the reissue rate.[2]  First American explains that because of the proposed settlement, individual proof issues are eliminated by the form through which potential class members would submit their claims.

As the court previously held, First American's liability to each of the class members depends upon the same issue, whether the applicant was eligible for the reissue rate but was charged a higher premium.  Eligibility will be determined based on the same claim form, which simplifies the process and avoids individual

---

[2]An absence of any explanation of the asserted common issues arising from First American's protocols, guidelines, and oversight prevented the court from finding that common issues predominated under Rule 23(b)(3) in its first order. Surprisingly, the plaintiffs continue to argue that the class would share these issues, which appear to pertain to a negligence claim that was not pled in the plaintiffs' complaint.  Given the lack of relevance, issues about First American's protocols, guidelines, and oversight of its agents are not considered for purposes of class certification.

investigations into files and records.  When class certification
is sought for settlement only, the court need not consider class
management problems.  <u>Waste Mgmt. Holdings, Inc. v. Mowbray</u>, 208
F.3d 288, 298 (1st Cir. 2000).

The potential class shares the common issue of determining
First American's liability and each members eligibility for a
claim, which predominate over any individual issues.  Because the
new issues raised by the plaintiffs about First American's
protocols, guidelines, and oversight are irrelevant to the claims
in this case, it is not necessary for the potential class members
to share those issues nor is it necessary for common questions
pertaining to those issues to predominate over individual
questions.  Therefore, common questions of law and fact
predominate.  Further, because each individual claim would be too
small for potential class members to litigate separately, a class
action is superior to individual litigation.


III.  <u>Certification</u>

Because the issue of adequacy of representation remains
unsettled, a class cannot be certified for settlement purposes
based on the stipulation and supporting memoranda presented.


11

<u>Conclusion</u>

For the foregoing reasons, the parties' renewed joint motion (document no. 62) is denied without prejudice to file a new proposed stipulation and a joint motion for approval that satisfies the requirements of adequate representation.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

April 28, 2008

cc:  Christopher D. Baucom, Esquire
     Elizabeth T. Ferrick, Esquire
     Wilbur A. Glahn, III, Esquire
     Douglas W. King, Esquire
     Charles A. Newman, Esquire
     Edward K. O'Brien, Esquire